IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 26-cv-00538-PAB

ALOIS CAPOTE ZAMORA,

Petitioner,

v.

MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security,
TODD BLANCHE, Acting U.S. Attorney General,
TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement,
GEORGE VALDEZ, Denver Field Office Director, U.S. Immigration and Customs
Enforcement, and
JUAN BALTAZAR, Warden of Denver Contract Detention Facility,

Respondents.[1]

---

**ORDER**

---

This matter comes before the Court on petitioner Alois Capote Zamora's

Amended Petition for Writ of Habeas Corpus [Docket No. 16].  Respondents filed a

response.  Docket No. 19.  Petitioner filed a reply.  Docket No. 20.[2]

I.    **BACKGROUND**[3]

Petitioner is a 42-year-old Cuban citizen and national.  Docket No. 16 at 4, ¶ 10.

On April 16, 2024, petitioner entered the United States and received humanitarian

---

[1] Markwayne Mullin is substituted as a party for Kristi Noem, Todd Blanche is
substituted as a party for Pamela Bondi, George Valdez is substituted as a party for
Robert Guadian, and Juan Baltazar is substituted as a party for Dawn Ceja pursuant to
Fed. R. Civ. P. 25(d).
[2] Petitioner's reply was not timely filed in accordance with the Court's March 2,
2026 Minute Order.  See Docket No. 15.
[3] The following facts are undisputed unless otherwise noted.

parole until June 12, 2025.  *Id.*, ¶ 11; Docket No. 19-1 at 3, ¶¶ 5-6.  On April 24, 2025, petitioner filed a Form I-485, Application to Register Permanent Residence or Adjust Status with United States Citizenship and Immigration Services.  Docket No. 19-1 at 3, ¶ 7.  Petitioner's application for adjustment was based on eligibility under the Cuban Adjustment Act of 1966 ("CAA").  *Id.*  Petitioner remained in the United States past the expiration of his parole.  *Id.*, ¶ 8.

Petitioner was issued a Notice to Appear that charged petitioner with being removable pursuant to 8 U.S.C. § 1227(a)(1)(B).  Docket No. 16 at 5, ¶ 12; Docket No. 19-1 at 4, ¶ 13.  After being taken into custody by Immigration and Customs Enforcement ("ICE"), petitioner appeared before an immigration judge on December 29, 2025 for a custody redetermination hearing.[4]  Docket No. 16 at 5, ¶ 14; Docket No. 19-1 at 3, ¶ 14.  The immigration judge determined that the court lacked jurisdiction to conduct a bond hearing.  Docket No. 16 at 5, ¶ 14; Docket No. 19-1 at 3, ¶ 14.

On January 2, 2026, petitioner filed a motion to terminate removal proceedings with the Executive Office for Immigration Review ("EOIR").  Docket No. 19-1 at 4, ¶ 15.  On January 6, 2026, the Department of Homeland Security ("DHS") filed a Form I-261, Additional Charges of Inadmissibility/Deportability.  *Id.*, ¶ 16.  The Form I-261 amended the Notice to Appear to classify petitioner as an arriving noncitizen and charged him as inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).  *Id.*  On January 14, 2026, the immigration judge denied petitioner's motion to terminate.  *Id.* at 4-5, ¶ 17.  The

---

[4] It is disputed when petitioner was taken into custody by ICE.  Petitioner states that he was taken into custody on September 12, 2025.  Docket No. 16 at 5, ¶ 13.  Respondents state that petitioner was taken into custody on December 9, 2025, after a Florida Highway Patrol officer encountered petitioner during a traffic stop.  Docket No. 19-1 at 3, ¶ 9.

immigration judge found that, as an arriving noncitizen, petitioner may pursue adjustment under the CAA while in removal proceedings. *Id.*

On January 16, 2026, petitioner appeared before the immigration judge during a master calendar hearing and conceded his removability pursuant to Form I-261. *Id.* at 5, ¶ 18. On February 2, 2026, petitioner filed an application for relief from removal with the EOIR. *Id.*, ¶ 19. On February 19, 2026, the EOIR scheduled petitioner's case for an individual hearing on March 5, 2026 on the merits of his application. *Id.*, ¶ 20. On February 27, 2026, petitioner filed a motion to continue the hearing, which was denied by the immigration judge. *Id.*, ¶¶ 21-22. However, the immigration judge determined that there was insufficient time to complete petitioner's hearing on March 5, 2026 and petitioner's hearing was rescheduled for April 1, 2026. *Id.*, ¶¶ 22-23. The immigration judge later determined that there was insufficient time to complete petitioner's hearing on April 1, 2026. *Id.*, ¶ 23.

On March 3, 2026, petitioner filed his amended Petition for Writ of Habeas Corpus. Docket No. 16  Petitioner brings claims for violations of the Immigration and Nationality Act ("INA") and implementing regulations (Count I); his Fifth Amendment right to due process (Count II); the Administrative Procedure Act (Count III); his Fifth Amendment right to Equal Protection (Count IV); the Suspension Clause of the U.S. Constitution (Count V); and the doctrine of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). *Id.* at 15-28.

## II.    ANALYSIS

Respondents contend that petitioner was detained pursuant to § 1225 upon his entry into the United States. *See* Docket No. 19 at 4. Respondents argue that

petitioner's "temporary parole into the United States did not change his status."  *Id.*

Respondents state that, upon expiration of petitioner's parole, petitioner was "properly

returned to the custody from which he was paroled by operation of law for his case to be

dealt with in the same manner as that of any other applicant for admission to the United

States."  *Id.* (citing 8 U.S.C. § 1182(d)(5)(A) (internal quotations omitted)).

"Section 1225(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C.

§ 1101 *et seq.,* as amended by the Illegal Immigration Reform and Responsibility Act of

1996 ("IIRIRA"), governs procedures for the inspection of aliens arriving in the United

States who have not been admitted or paroled."  *M.S.P.C. v. U.S. Customs & Border

Prot.*, 60 F. Supp. 3d 1156, 1161 (D. N.M. 2014) (citing 8 U.S.C. § 1225(b)(1)).  "Aliens

who have not been admitted or paroled into the United States and who have not

satisfactorily demonstrated to an immigration officer that the alien has been physically

present in the United States continuously for the prior two years are subject to

expedited removal without further hearing or review, unless the alien indicates an

intention to apply for asylum or a fear of persecution, at which point the immigration

officer shall refer the alien for an interview by an asylum officer."  *Id.* (citing 8 U.S.C.

§ 1225(b)(1)(A)(i)-(iii)).  Section 1225(b)(1)(B)(ii) requires that, if an asylum officer

determines that a noncitizen has a credible fear of persecution, the noncitizen shall be

detained for further consideration of the application for asylum.  8 U.S.C.

§ 1225(b)(1)(B)(ii).  However, as explained in more detail below, 8 U.S.C.

§ 1182(d)(5)(A) allows noncitizens to be paroled "for urgent humanitarian reasons or

significant public benefit."  8 U.S.C. § 1182(d)(5)(A).  Thus, noncitizens who are

detained under § 1225(b)(1)(B)(ii) can be paroled under § 1182(d)(5)(A).

The Court rejects respondents' argument that petitioner's detention, upon termination of his parole, must have necessarily reverted back to the statute that governed petitioner's original detention.  Section 1182(d)(5)(A) "does *not* state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained."  *Qasemi v. Francis*, 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025).  Rather, it states that, following the expiration of parole, the noncitizen shall (1) "forthwith return or be returned to the custody from which he was paroled" and (2) "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).  Neither of these requirements authorize treating petitioner, who was paroled, as if he is "arriving in the United States."

First, returning petitioner "to the custody from which he was paroled" does not mean that petitioner's status under § 1225 reverts back to what it was when he was initially in custody.  In fact, § 1182(d)(5)(A) "recognizes that the parole physically happened, because it contemplates that the noncitizen must be returned to detention."  *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 86 (D.D.C. 2025).  Thus, § 1182(d)(5)(A) recognizes that noncitizens paroled under its authority are released into the United States.  It would be illogical that these noncitizens would revert back to being detained pursuant to § 1225(b)(1), which governs the inspection of noncitizens "arriving into the United States," instead of considering them detained under another applicable authority.  This is especially true given that § 1182(d)(5)(A) does not state that a noncitizen reverts back to the status he or she possessed before the grant of parole.

5

The second requirement of § 1182(d)(5)(A) – that, after returning to custody, a noncitizen's case shall continue to be dealt with in the same manner as any other applicant for admission – also does not make § 1225(b)(1) applicable.  Section 1225(a)(1) defines an applicant for admission as a noncitizen "present in the United States who has not been admitted or who arrived in the United States (whether or not at a designated port of arrival . . . )."  8 U.S.C. § 1225(a)(1).  Thus, an "applicant for admission" need not be "arriving in the United States."  Rather, "[a]ll the term 'applicant for admission' requires is presence in the United States without admission."  *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025).  And, as § 1182(d)(5)(A) specifies, parole is not regarded as admission.  8 U.S.C. § 1182(d)(5)(A).  "Thus, Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal."  *Rodriguez-Acurio*, 2025 WL 3314420, at *17.  Accordingly, the Court finds that § 1182(d)(5)(A) does not require petitioner to be detained under the same statutory status as his original detention.

Respondents argue that the Court should not rely on its reasoning in *Rafibaev v. Noem*, No. 26-cv-00461-PAB, 2026 WL 607559 (D. Colo. Mar. 4, 2026), because the Court did "not consider the alternative basis for detention that Respondents raise here, § 1225(b)(2)(A), which also requires mandatory detention for applicants for admission." Docket No. 19 at 8 n.5.  Section 1225(b)(2) applies to a noncitizen "who is an applicant for admission, [where] the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C.

§ 1225(b)(2)(A).  Thus, "[s]ection 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States."  *See Mukhin v. Rose*, 2026 WL 524266, at *6 (M.D. Pa. Feb. 25, 2026).  The Court finds that, upon termination of his parole, petitioner did not become a noncitizen seeking admission.  As discussed above, regardless of whether petitioner was detained pursuant to § 1225(b)(1) or § 1225(b)(2) upon his initial entry into the United States, petitioner's detention did not revert back to § 1225 when his parole was terminated.  *See Vasquez Salgado v. Francis*, 2026 WL 915304, at *6 (S.D.N.Y. Apr. 3, 2026) ("When Petitioner was released on parole under Section 1182(d)(5)(A), she was removed from the ambit of the mandatory detention regime established in Section 1225.  The mere expiration of her parole does not return Petitioner to that world."); *Kumar v. Johnson*, 2026 WL 937560, at *1-2 (W.D. Okla. Apr. 7, 2026) (rejecting respondents' argument that § 1225(b)(2) controls the detention of a petitioner who was initially released on parole under 8 U.S.C. § 1182(d)(5)(A) and later re-detained).  "[A]n applicant 'seeking admission' is similarly positioned to one arriving" and "it necessarily follows that a noncitizen paroled into the country – *i.e.*, a noncitizen residing in the United States – is not an arriving alien."  *See Qasemi*, 2025 WL 3654098, at *7.

As the Court has found in several cases, § 1226, not § 1225, applies to the detention of noncitizens, like petitioner, who were detained while already residing in the United States.  *See, e.g.*, *Moncada-Hernandez v. Trump*, No. 26-cv-00436-PAB, 2026 WL 472744, at *2-3 (D. Colo. Feb. 19, 2026); *De La Cruz v. Baltazar*, No. 26-cv-00360-PAB, 2026 WL 439217, at *2 (D. Colo. Feb. 16, 2026); *Gabriel-Morales v. Bondi*, No. 26-cv-00392-PAB, 2026 WL 415597, at *2 (D. Colo. Feb. 13, 2026).  Noncitizens

7

detained under § 1226(a) are entitled to receive bond hearings. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018). Because there is no evidence that petitioner has received a bond hearing, his current detention violates § 1226(a). Petitioner requests that the Court order his immediate release or, in the alternative, order a "constitutionally adequate bond hearing at which DHS bears the burden of proving that Petitioner is a danger to the community or risk of flight." Docket No. 16 at 29. The Court finds that a bond hearing is a more appropriate remedy given that § 1226(a) authorizes petitioner's detention.[5]

### III.    CONCLUSION

Therefore, it is

**ORDERED** that Alois Capote Zamora's Petition for Writ of Habeas Corpus [Docket No. 16] is **GRANTED**. It is further

---

[5] Because the Court will order respondents to provide petitioner a bond hearing on the basis of Count I, which alleges respondents' violation of the INA, it will not address petitioner's other claims for relief. *See Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *8 (D. Colo. Oct. 22, 2025) ("The Court will thus grant the Petition with respect to Petitioner's first claim. Since the Court's ruling on the INA claim will afford Petitioner the entirety of the relief he seeks, the Court need not address Petitioner's remaining arguments."). The Court will not consider petitioner's request for attorney's fees because petitioner fails to comply with the Local Rules of the District of Colorado. *See* Docket No. 1 at 32. A motion for attorney's fees must be filed in accordance with D.C.COLO.LCivR 54.3. *See* D.C.COLO.LCivR 54.3 ("Unless otherwise ordered, a motion for attorney fees shall be supported by affidavit. . . . The Motion shall include . . . for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.").

**ORDERED** that, within **seven days** of the date of this Court's order, respondents shall provide petitioner with a bond hearing under 8 U.S.C. § 1226(a), where the government shall bear the burden of proving that petitioner's continued detention is justified.[6]  It is further

**ORDERED** that within **five days** of petitioner's bond hearing, the parties shall file a status report indicating whether the bond hearing was held and whether bond was granted or denied.

DATED April 16, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

---

[6] "[T]he weight of authority in this District is clear: it is the Government's burden to justify a noncitizen's continued detention at a bond hearing."  *See Abanil v. Baltazar*, No. 25-cv-4029-WJM-STV, 2026 WL 100587, at *8 (D. Colo. Jan. 14, 2026 (internal quotation, alteration, and citation omitted) (collecting cases); *Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, 2025 WL 4083607, at *4 (D. Colo. Oct. 31, 2025) ("the Court sides with the majority of courts in this District that have found that it is more appropriate for the government to bear the burden of proof in this context").